CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 13-2245

PARMALAT CAPITAL FINANCE LIMITED,

*Plaintiff-Appellant*,

*v.*

GRANT THORNTON INTERNATIONAL and GRANT THORNTON S.P.A.,

*Defendants-Appellees*.

---

No. 13-2253

ENRICO BONDI,

*Plaintiff-Appellant*,

*v.*

GRANT THORNTON INTERNATIONAL, *et al.*,

*Defendants-Appellees*.

---

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.
Nos. 04 C 6031, 06 C 47 — **John W. Darrah**, *Judge*.

---

ARGUED MAY 27, 2014 — DECIDED JUNE 25, 2014

---

Before POSNER, EASTERBROOK, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. These appeals arise from litigation relating to the collapse in 2003, following a decade of wild growth and mounting losses, of a large Italian food and dairy company named Parmalat. Parmalat entered bankruptcy in Italy and Enrico Bondi was appointed "extraordinary commissioner," the Italian equivalent of a bankruptcy trustee. The litigation is highly complex; we'll simplify ruthlessly.

In 2004 Bondi instituted in the bankruptcy court of the Southern District of New York a proceeding under the since-repealed section 304 of the U.S. Bankruptcy Code to "enjoin the commencement or continuation of any action against [Parmalat] with respect to property involved in" the Italian bankruptcy proceeding. 11 U.S.C. § 304(b)(1)(A)(i) (repealed); *In re Parmalat Finanziaria S.p.A.*, No. 1:04-bk-14268-rdd (Bankr. S.D.N.Y. June 22, 2004). The objective was to consolidate the claims against the bankrupt company.

A couple of months after the filing in New York, Bondi filed a suit in the Circuit Court of Cook County, Illinois, against Grant Thornton International, an accounting company. *Bondi v. Grant Thornton Int'l*, No. 2004-L-009290 (Cook County Law Div. Aug. 18, 2004). Two of its subsidiaries were joined as defendants in the suit, but we can ignore them for the most part and pretend there was just one defendant, which we'll call Grant Thornton. The suit charged Grant Thornton with having contributed to the collapse of Parmalat by conducting fraudulent audits of Parmalat's books in violation of Illinois tort law. Bondi stands in Parma-

lat's shoes, so to simplify we'll call the plaintiff Parmalat rather than Bondi.

Parmalat's suit is the earlier of the two cases before us. The other, brought by a bankrupt subsidiary of Parmalat named Parmalat Capital Finance Limited (the parties call it PCFL), see *Parmalat Capital Finance v. Grant Thornton Int'l*, No. 2005-L-013942 (Cook County Law Div. Dec. 9, 2005), is materially the same as Parmalat's case, at least so far as the issues germane to the appeal, and was decided the same way. So we'll ignore its separate identity and pretend that we have only two parties to deal with, Parmalat and Grant Thornton.

Before proceeding to the merits of the appeals, we need to consider two jurisdictional wrinkles. One of the defendants in both suits is Grant Thornton's Italian subsidiary, Grant Thornton S.p.A. (the parties call it Grant Thornton Italy). Although Parmalat's claims against it remain pending in the district court, Parmalat sought and obtained from the district court an appealable judgment, under Fed. R. Civ. P. 54(b), against the other two Grant Thornton defendants, and so their appeals are properly before us. PCFL, the plaintiff in the second suit, abandoned its claim against the Italian subsidiary and so was able to file a conventional appeal from a final judgment. 28 U.S.C. § 1291. So we can proceed to the merits of the appeals.

Grant Thornton had removed the suit that Parmalat filed in the Circuit Court of Cook County to the federal district court for the Northern District of Illinois, pursuant to 28 U.S. § 1334(b). That section, so far as pertains to this case, confers original though not exclusive federal jurisdiction over all civil suits "related to cases under title 11" (the Bankruptcy

Code). The suit in the bankruptcy court in New York was a suit to which the Illinois suit was related. The Judicial Panel on Multidistrict Litigation therefore stepped in and transferred the suit in the Northern District of Illinois to the Southern District of New York, so that the related suits would be in the same district for pretrial proceedings. See 28 U.S.C. § 1407(a).

Parmalat asked Judge Lewis A. Kaplan, the federal district judge assigned to the case in the Southern District of New York, to abstain from deciding the case. 28 U.S.C. § 1334(c)(2) provides that in the case of a proceeding, based upon a state law claim (as was the suit that Parmalat had filed in the Illinois state court) and (as also true of Parmalat's suit) "related to a case under title 11 but not arising under title 11 … , with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [section 1334(b)], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction," in this case the Cook County court.

Judge Kaplan declined to abstain, *Bondi v. Grant Thornton Int'l*, 322 B.R. 44 (S.D.N.Y. 2005), and in 2009 granted Grant Thornton's motion for summary judgment, on the ground that the doctrine of *in pari delicto* (equally in fault) barred Parmalat's claim against the accounting company. *In re Parmalat Securities Litigation*, 659 F. Supp. 2d 504, 530 (S.D.N.Y. 2009). Parmalat appealed and in February 2012 the U.S. Court of Appeals for the Second Circuit vacated Judge Kaplan's decision and remanded the case with directions "to transfer [it] to the Northern District of Illinois so that [the case] can be remanded to Illinois state court," i.e., the Cook

County court. *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 671 F.3d 261, 271 (2d Cir. 2012) (per curiam).

Six weeks after the Second Circuit's decision, this court in *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012), upheld an *in pari delicto* defense in a case also based on Illinois law and seemingly quite similar to Parmalat's case against Grant Thornton. Grant Thornton had already filed a petition for rehearing in the Court of Appeals for the Second Circuit, and now supplemented it by directing the court's attention to our decision. To no avail. The court denied the petition with no statement of reasons.

As instructed to do by the court of appeals, Judge Kaplan transferred the case back to the Northern District of Illinois to remand it to the Cook County court. Judge John W. Darrah, presiding at the remanded proceeding in the Northern District, declined to remand it. He ruled that any doubt about the Illinois law applicable to the remanded case had been erased by our decision in *Peterson v. McGladrey*, and that as a result it was clear that Grant Thornton had a valid *in pari delicto* defense against Parmalat's suit, so it would be a waste of time to remand the case, nearly nine years old, to the state court. Parmalat asks us to reverse Judge Darrah's decision, on the ground that the judge should have followed the instructions from New York and remanded the case to the Illinois state court.

It is of course common for a court to apply the law of a different jurisdiction from its own. The federal diversity jurisdiction is an example. The rules governing choice of law provide many other examples. So one would expect that a court (in this case the U.S. District Court for the Southern District of New York) that had pending before it a number of

cases that had been transferred to it from other districts, and were governed by the law of the states that contain those districts, would simply apply the laws of those states to the cases. And likewise that if that court transferred the case to another federal court, in this case the Northern District of Illinois, the transferee court would apply any governing state law, in this case the law of Illinois. But section 1334(c) of the federal judicial code, as we've seen, carves an exception for cases that, though removable to federal court (without regard to diversity) because they are related to a bankruptcy case, arise under state law. The federal court must remand such a case to the state court if it "can be timely adjudicated … in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

The reason for this rule is that the only basis for removal of such cases to a federal court is that they are related to a bankruptcy proceeding; and so neither party has the kind of interest that would ordinarily allow someone to litigate a state law claim in federal court, such as concerns that a state court might be biased in favor of the local adversary in a suit in which the other party is from out of state (a diversity case), *Bank of U.S. v. Deveaux*, 9 U.S. (5 Cranch) 61, 87 (1809) (Marshall, C.J.); David L. Shapiro, "Federal Diversity Jurisdiction: A Survey and a Proposal," 91 *Harv. L. Rev.* 317, 329–30 (1977); cf. Henry J. Friendly, "The Historic Basis of Diversity Jurisdiction," 41 *Harv. L. Rev.* 483, 492–93 (1928), or that the state law claim might overlap the federal claim in the case and thus be within the federal district court's supplemental jurisdiction. See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); see also 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005).

At any rate, the rule is the rule; so provided the state court adjudication would be "timely," Judge Kaplan was required to abstain and the case had to go back to the state court. Actually it doesn't matter any more whether adjudication of Parmalat's case by the Illinois state court system would be timely. The Second Circuit ordered Judge Kaplan to abstain and thus transfer the case back to the Northern District of Illinois with directions to remand it to the Illinois state court. If the abstention order stands, the order to remand can't be questioned, because it followed automatically from the order to abstain and that order can't be challenged because 28 U.S.C. § 1334(d) provides with an immaterial exception that "any decision to abstain ... is not reviewable by appeal or otherwise by the court of appeals … or by the Supreme Court of the United States." (The "otherwise" presumably refers to mandamus or some other process used by an appellate court, since the only reviewing bodies mentioned in the section are appellate courts.)

The statute doesn't say in so many words that an order to abstain is not reviewable by another district court, but the idea that a district judge has appellate authority denied to the U.S. Supreme Court can't be taken seriously. It would imply that although the Supreme Court could not have reversed the Second Circuit's decision ordering that the case be returned to the Illinois state court, a district judge could do so. And that in turn would imply that Judge Kaplan himself could have refused to obey the Second Circuit's mandate. If Judge Darrah could overrule it, why not Judge Kaplan? Both are federal district judges.

Federal district judges have appellate authority over decisions by magistrate judges, bankruptcy judges, and certain

administrative law judges (administrative law judges in social security disability cases, for example), but not over decisions by other district judges, let alone by courts of appeals. A district judge is sometimes authorized to alter the consequences of a decision that has been affirmed by an appellate court, notably in collateral attacks on convictions or sentences. 28 U.S.C. § 2255; 18 U.S.C. § 3582(c). And he can invoke Fed. R. Civ. P. 60(b) to set aside judgments even if they have been affirmed. But such revisionary litigation is based on events occurring after the judgment to be revised was entered or on information obtained after that judgment. Nothing has happened since the Second Circuit's decision to justify a district court's reopening and reversing it.

Grant Thornton disagrees. It argues that our decision in *Peterson v. McGladrey*, *supra*, which was not before the Second Circuit when it ordered abstention, is a subsequent development that demonstrates that remand to the Illinois state court would not be "timely" after all, and so was not required by 28 U.S.C. § 1334(c)(2), as the Second Circuit would have realized had *Peterson v. McGladrey* been issued before the reversal of Judge Kaplan. But that is wrong on two counts. First, Grant Thornton *had* alerted the Second Circuit to our decision, yet the petition for rehearing had been denied anyway. That distinguishes the situation in this case from that discussed in the passage in *Barrow v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993), on which Grant Thornton relies, where we said that "an appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of *subsequent* factual discoveries or changes in the law." The italicized word, which is critical to the meaning of the quoted passage, can't be applied to this case, given that our decision was drawn to the

Second Circuit's attention before it ruled on the petition for rehearing.

Second, at least so far as relates to the present case *Peterson v. McGladrey* was not a novel decision. It reaffirmed *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982), decided 30 years before the Second Circuit reversed Judge Kaplan. A case quite like this one, *Cenco* had held that Illinois tort law would apply the doctrine of *in pari delicto* to prevent a corporation that engaged in fraud from shifting its liability to independent auditors of the corporation who the corporation argued had not only failed to detect the fraud, but had been complicit in it. The fraud committed by the corporation's managers had to be imputed to the corporation because they were acting on its behalf (albeit unlawfully), thus making the corporation *in pari delicto* with its auditors. The fact that many of the corporation's shareholders, and thus potential beneficiaries of a judgment against the auditors, were innocent of the fraud (though not all—the managers were also shareholders, and the board of directors, elected by the shareholders, had been negligent in failing to detect the fraud) did not negate the auditors' *in pari delicto* defense.

Parmalat's suit against Grant Thornton is similar. Parmalat's managers engaged in fraud designed to enrich Parmalat (and therefore themselves); the auditors failed to detect the fraud—may indeed have been complicit in it (or so Parmalat argues); Parmalat wants to shift its liability to the auditors (the Grant Thornton companies). Parmalat's and Cenco's cases are thus similar, as Grant Thornton argues. But there is a rub: our analysis in *Cenco* was not based on Illinois statutory or case law; for there was none that bore on the *in pari de-*

*licto* issue. We were trying to predict how the Supreme Court of Illinois would decide such a case. We decided in *Peterson v. McGladrey* to follow *Cenco* not because the Illinois courts or legislature had adopted our decision, thus making it Illinois law, but because "*Cenco* predicted that Illinois would hold that fraud by corporate managers is imputed to the corporation where 'managers are not stealing from the company—that is, from its current stockholders—but instead are turning the company into an engine of theft against outsiders.' *Cenco*, 686 F.2d at 454. Thirty years have passed, and no court in Illinois has disagreed with this understanding." *Peterson v. McGladrey & Pullen, LLP*, *supra*, 676 F.3d at 599.

We can't be certain that *Cenco* so clearly dictates the result in this case that remanding the case to the Illinois state court would be bound to produce *gratuitous* delay, making abstention in favor of that court not "timely." We can't be certain that the Supreme Court of Illinois would follow *Cenco* in all particulars relevant to Parmalat's case. We've found only one Illinois decision, and that of Illinois's intermediate appellate court rather than its supreme court, that treated, or at least seemed to treat, *Cenco* as securely a part of Illinois law: *Holland v. Arthur Andersen & Co*., 469 N.E.2d 419, 425–26 (Ill. App. 1984), which called *Cenco* "a leading case." *Id*. at 425. Our cautious statement in *Peterson v. McGladrey* that no court in Illinois has expressed disagreement with *Cenco* is more accurate than Grant Thornton's assertion that *Cenco* is a correct interpretation of Illinois law. *Cenco* is not without its critics. A few years ago the Supreme Court of Pennsylvania, while complimenting *Cenco* as a "pioneering decision," followed up the compliment with criticisms. *Official Committee of Unsecured Creditors of Allegheny Health Education & Research Foundation v. PriceWaterhouseCoopers, LLP*, 989 A.2d

313, 331–32 (Pa. 2010). And New Jersey's supreme court, while calling *Cenco* "the seminal case on this issue," seems to have rejected it altogether, see *NCP Litigation Trust v. KPMG LLP*, 901 A.2d 871, 883–88 (N.J. 2006)—though New York's highest court has adopted it. See *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 952–53 (N.Y. 2010).

In short, the only reason for the Second Circuit to have refused to send the case back to the Illinois state court would have been that it would be a waste of time because Illinois law recognizes an auditor's *in pari delicto* defense and thus exonerates Grant Thornton. But *Peterson v. McGladrey* didn't say that. It said that thirty years had left *Cenco* undisturbed by Illinois cases—an observation that could have been made, if *Peterson v. McGladrey* had not yet been decided, simply by Shepardizing *Cenco*.

Since nothing happened after the Second Circuit ordered the case transferred to the Illinois state court that might have justified Judge Darrah in disregarding the order, his action was unauthorized—an exercise of de facto appellate authority prohibited by 28 U.S.C. § 1334(d). It also contravened the Supreme Court's warning that "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988).

Not that we're sure that the Second Circuit was correct to decide that this case could be "timely adjudicated" in the Illinois state court system. In deciding it was, the court considered four "factors." *Parmalat Capital Finance Ltd. v. Bank of America Corp., supra*, 671 F.3d at 266. (For their origin, see *Bates & Rogers Construction Corp. v. Continental Bank, N.A.*, 97

B.R. 905, 908 (N.D. Ill. 1989); *In re DeLorean Motor Co.*, 49 B.R. 900, 911 (Bankr. E.D. Mich. 1985); Lawrence P. King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," 38 *Vand. L. Rev.* 675, 702 (1985).) These are how much longer the case would take to resolve in the state judicial system than in the federal system, the complexity of the issues to be decided and which court could unravel that complexity better, the status of the bankruptcy proceeding to which the case relates, and whether remand to the state court would prolong the bankruptcy proceeding. (As an aside, we note that the third and fourth factors really seem to be one, while the second is in form two but in actuality one—which court system can better handle complex issues that may arise in the case.)

Regarding the first consideration, the Second Circuit noted that of course there would be some additional delay. Judge Kaplan had decided the case, on summary judgment, in favor of Grant Thornton. So nothing remained for decision by him, whereas a remand to the Illinois state court would entail a restart of the litigation from scratch, though the litigation might end quickly if the state judge agreed with Judge Kaplan's analysis and forthwith entered summary judgment for Grant Thornton. But the Second Circuit found no basis for thinking the added delay would be more than a few months. The court, unsurprisingly, didn't foresee Judge Darrah's refusal to comply with the court's directive to send the case back to the Illinois state court; as a result it is now 28 months since the Second Circuit's decision, and no restart yet in the Illinois court.

Regarding complexity, the Second Circuit said not unreasonably that the Illinois state court system would provide a

Case: 1:04-cv-06031 Document #: 144 Filed: 07/17/14 Page 13 of 14 PageID #:5701
Case: 13-2245 Document: 00712273675 Filed: 07/17/2014 Pages: 14



more authentic resolution of issues, whether simple or complex, because they are issues of Illinois law. And regarding the impact on or of the bankruptcy proceedings in New York, the court plausibly determined that it would be negligible.

If we *knew* that Judge Kaplan's opinion rejecting Parmalat's claim against Grant Thornton would persuade the Illinois courts, then affirming Judge Darrah would bring this litigation to a close before it had a chance to exceed the length of the Trojan War (10 years). But we can't be certain what the Illinois courts will do. And nowhere in its 85-page brief does Grant Thornton contend that the problem illustrated by this case—the intricacies of the *in pari delicto* defense in corporate suits against independent auditors—arises frequently enough to justify the radical surgery that it asks us to perform on the "no appeal" clause of section 1334(d). Indeed, *enforcing* that clause strictly may minimize overall delay in the decision of state-law cases related to bankruptcy proceedings. Had Judge Darrah, as directed by the Second Circuit, remanded the case two years ago to the Circuit Court of Cook County, the litigation might well be at an end rather than on the brim of restarting.

We conclude that Judge Darrah was authorized to do naught but remand the case (actually cases, but we've been pretending there's just one, for the sake of simplicity) to the Cook County court. He must do so now.

One loose end remains to be tied up. Remember that there are actually three defendants in Parmalat's suit, and only two are covered by this appeal. The case against the third, the Italian subsidiary, remains in the district court after having been transferred to New York and then trans-

ferred back. No final judgment has been entered in that third case. Because the case is not before us, we can't issue an order in it. But obviously the district court should remand it to the Cook County court, there to join the rest of Parmalat's suit plus PCFL's companion suit.

REVERSED AND REMANDED.